COOLEY LLP
WILLIAM K. PAO (252637)
JONATHAN B. WAXMAN (294851)
Wells Fargo Center, South Tower
355 South Grand Avenue, Suite 900
Los Angeles, CA 90071
Telephone: (213) 561-3250
Facsimile: (213) 561-3244
wpao@cooley.com
jwaxman@cooley.com

BRETT DE JARNETTE (292919)
AMIE L. SIMMONS (336356)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000
Facsimile: (650) 849-7400
bdejarnette@cooley.com
asimmons@cooley.com

*Attorneys for Defendant*
ACTIVEHOURS, INC. dba EARNIN

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FELIX RAMIREZ and MICHAEL COLLINS, individually, on behalf of all others similarly situated, and on behalf of the general public,<br><br>Plaintiffs,<br><br>v.<br><br>ACTIVEHOURS, INC. d/b/a EARNIN,<br><br>Defendant. | Case No. 5:25-cv-03625-PCP<br><br>**DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**<br><br>Date: November 20, 2025<br>Time: 10:00 a.m.<br>Dept: Courtroom 8, 4th Floor<br>Judge: Hon. P. Casey Pitts<br><br>Trial Date: None set<br>Date Action Removed: April 24, 2025 |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................. 1

II. ARGUMENT ........................................................................................................................ 3

    A. Plaintiffs Concede that they Lack Standing to Bring a TILA Claim. ...................... 3

    B. EarnIn's Cash Out Product is Not an Extension of Credit Under the MLA or TILA. ............................................................................................................... 3

    C. Optional Lightning Speed Fees and Tips Are Not Finance Charges. ..................... 8

    D. Plaintiffs Fail to State a Claim Under the IPLPA. ................................................ 12

III. CONCLUSION .................................................................................................................. 13

COOLEY LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

Page

**Cases**

*Beebe v. Kirkpatrick*,
   152 N.E. 539 (Ill. 1926) .................................................................................................. 13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................................ 5

*California Pawnbrokers Assn., Inc. v. Carter*,
   No. 2:16-cv-02141-JAM-KJN, 2016 WL 6599819 (E.D. Cal. Nov. 8, 2016) ................. 8

*Caraco Pharm. Lab'ys, Ltd. v. Novo Nordisk A/S*,
   566 U.S. 399 (2012) ........................................................................................................ 7

*Chevron, U.S.A., Inc. v. NRDC*,
   467 U.S. 837 (1984) ........................................................................................................ 7

*Cox v. Cmty. Loans of Am., Inc.*,
   No. 4:11–CV–177 (CDL), 2014 WL 1216511 (M.D. Ga. Mar. 24, 2014) ..................... 8

*Fin. Freedom Acquisition, LLC v. Std. Bank & Tr. Co.*,
   43 N.E.3d 911 (Ill. 2015) ................................................................................................ 8

*Gjovik v. Apple Inc.*,
   No. 23-CV-04597-EMC, 2025 WL 637931 (N.D. Cal. Feb. 27, 2025) ......................... 2

*Golubiewski v. Activehours, Inc.*,
   No. 3:22-CV-02078, 2025 WL 2484192 (M.D. Pa. Aug. 28, 2025) .............................. 1

*Gonzalez v. Specialized Loan Servicing, LLC*,
   691 F. Supp. 3d 1162 (C.D. Cal. 2023) .......................................................................... 8

*Hamilton v. York*,
   987 F. Supp. 953 (E.D. Ky. 1997) .................................................................................. 6

*Household Credit Servs., Inc. v. Pfennig*,
   541 U.S. 232 (2004) ...................................................................................................... 11

*James E. Roberts-Obayashi v. Steadfast Ins. Co.*,
   No. C05-02079 MJJ, 2005 WL 8162728 (N.D. Cal. Oct. 20, 2005) .............................. 3

*Johnson v. Activehours, Inc.*,
   No. 1:24-CV-02283-JRR, 2025 WL 2299425 (D. Md. Aug. 8, 2025) ........................... 1

*Lazy Y Ranch Ltd. v. Behrens*,
   546 F.3d 580 (9th Cir. 2008) .......................................................................................... 5

# TABLE OF AUTHORITIES
(continued)

Page(s)

*London v. Chase Manhattan Bank USA, N.A.*,
    150 F. Supp. 2d 1314 (S.D. Fla. 2001) .................................................................................. 9

*Loper Bright Enterprises v. Raimondo*,
    603 U.S. 369 (2024) ........................................................................................................... 6, 7

*McAnaney v. Astoria Fin. Corp.*,
    665 F. Supp. 2d 132 (E.D.N.Y. 2009) .................................................................................. 9

*Moss v. Cleo AI Inc.*,
    No. 25-879, 2025 WL 2592265 (W.D. Wash. Sept. 8, 2025) ............................................... 1

*Orubo v. Activehours, Inc.*,
    780 F. Supp. 3d 927 (N.D. Cal. 2025) .........................................................................*passim*

*Reed v. Val-Chris Investments, Inc.*,
    No. 11cv371 BEN (WMC), 2011 WL 6028001 (S.D. Cal. Dec. 5, 2011) ............................ 8

*Skidmore v. Swift & Co.*,
    323 U.S. 134 (1944) ............................................................................................................. 7

*In re Smith*,
    Bankruptcy No. 24 B 07529, 2025 WL 1794127 (Bankr. N.D. Ill. June 26,
    2025) ................................................................................................................................... 12

*Stanley v. City of Sanford*,
    145 S. Ct. 2058 (2025) ......................................................................................................... 8

*Turner v. E-Z Check Cashing of Cookeville, TN, Inc.*,
    35 F. Supp. 2d 1042 (M.D. Tenn. 1999) .............................................................................. 6

*Veale v. Citibank, F.S.B*,
    85 F.3d 577 (11th Cir. 1996) ................................................................................................ 9

**Statutes**

815 ILCS
    § 123/15-1-5 ........................................................................................................................ 12
    § 123/15-1-10 ...................................................................................................................... 12
    § 123/15-5-5 ........................................................................................................................ 13
    § 123/15-5-20 ...................................................................................................................... 12

15 U.S.C.
    § 1602(f) ...................................................................................................................... 1, 3, 4
    § 1692f(1) ........................................................................................................................... 12

COOLEY LLP
ATTORNEYS AT LAW

-iii-

DEFENDANT'S REPLY ISO
MOTION TO DISMISS
5:25-CV-03625-PCP

# TABLE OF AUTHORITIES
(continued)

Page(s)

**Other Authorities**

12 C.F.R.
    pt. 1026, Supp. I, Part 1 ¶ 2(a)(14) (2025) ................................................................................ 6
    § 1026.4(a) ............................................................................................................................ 8, 9

32 C.F.R.
    § 232.3(h) ............................................................................................................................. 1, 3
    § 232.3(n) ................................................................................................................................. 8

80 Fed. Reg.
    43,560, 43,579 (July 22, 2015) ................................................................................................ 6
    43,579 ....................................................................................................................................... 6

CFPB, *Payday Loans and Deposit Advance Products* 12 (April 2013),
    http://files.consumerfinance.gov/f/201304_cfpb_payday-dap-whitepaper.pdf ........................ 6

Ill. Admin. Code tit. 38, § 215.10 ................................................................................................... 8

*Public Act 101-0658 and Predatory Loan Prevention Act (PLPA) Frequently
    Asked Questions*, ILL. DEP'T FIN. & PROF. REG'N (Apr. 5, 2021),
    https://idfpr.illinois.gov/content/dam/soi/en/web/idfpr/forms/dfi/2021-05-13-
    plpa-faqs.pdf .......................................................................................................................... 12

## I. INTRODUCTION

EarnIn's Cash Out product is *not* "credit," i.e., the right "to defer payment of debt or to incur debt and defer its payment." 15 U.S.C. § 1602(f) (Truth in Lending Act (TILA)); 32 C.F.R. § 232.3(h) (Military Lending Act (MLA) Rule). Plaintiffs admit that "debt"—and therefore an extension of "consumer credit"—requires an "obligation" to repay that can lead to legal "liability." ECF No. 45 (hereinafter "Opp.") at 7–8. Plaintiffs further acknowledge that they had—and still have—the ability to receive a Cash Out and walk away without paying it back. *Id.* at 13. Nevertheless, Plaintiffs argue that they were "obligated" to repay their advances because they "pre-authorized" a payment *method*—an authorization that could be revoked at any time. *Id.* at 8, 11. But that argument runs squarely counter to Plaintiffs' operative agreement with EarnIn, which plainly specifies that they did "not have an obligation to repay any of the Cash Out Services" and that "EarnIn will have no legal or contractual claim or remedy against [them] based on [their] failure to repay." ECF No. 35 (hereinafter "Mot.") at 14; ECF No. 36 (hereinafter "De Jarnette Decl.") Ex. 1 (emphasis omitted). Moreover, under Plaintiffs' reasoning, every consumer enrolled in autopay for a subscription service, from video streaming to gym memberships, has an "obligation" to pay for the following month, simply because a debit will occur unless they cancel before the next month. That defies the ordinary meaning of "debt" and "obligation" and conflates a voluntary authorization of payment with a legally enforceable duty to repay.

To be sure, this Court recently held otherwise in *Orubo v. Activehours, Inc.*, 780 F. Supp. 3d 927 (N.D. Cal. 2025), based on its view of the "real-world" nature of Cash Out transactions. *Id.* at 935.[1] But even under that functional lens, EarnIn should prevail here. Unlike in *Orubo*, the record in this case contains Plaintiffs' actual transaction history, which conclusively belies any suggestion that customers have an *obligation* to repay Cash Outs or to pay Lightning Speed fees or tips. Indeed, on ten different occasions, Plaintiff Ramirez did not repay Cash Outs on his scheduled

---

[1] Three other district courts have denied motions to dismiss in similar cases, agreeing with this Court's interpretation of either the term "credit" or the term "finance charge." *See Moss v. Cleo AI Inc.*, No. 25-879, 2025 WL 2592265 (W.D. Wash. Sept. 8, 2025); *Johnson v. Activehours, Inc.*, No. 1:24-CV-02283-JRR, 2025 WL 2299425 (D. Md. Aug. 8, 2025); *Golubiewski v. Activehours, Inc.*, No. 3:22-CV-02078, 2025 WL 2484192 (M.D. Pa. Aug. 28, 2025). Those courts largely adopted this Court's analysis, without providing additional reasons supporting their interpretation. Thus, EarnIn's responses to this Court's decision in *Orubo* apply equally to those decisions.

repayment date, and he has yet to provide any examples of consequences he faced as a result. In the real world, true "borrowers" would face a different fate—confirming that Cash Outs are not extensions of credit. Further, Plaintiff Ramirez frequently requested Cash Outs without leaving any tip or using the Lightning Speed option, thus receiving Cash Outs for *no cost*. *See* Mot. at 7–8; De Jarnette Decl. Ex. 6. This fact not only reinforces the unique, non-credit nature of Cash Outs but also shows the very real consumer choice built into the product. Thus, while Plaintiffs ask this Court to focus on the "true substance" of the Cash Out product (Opp. at 2), they virtually ignore their own transaction records—which is the best indication of "true substance." Those records make this case fundamentally different from *Orubo*.[2]

Ultimately, Plaintiffs raise claims under laws that do not fit EarnIn's Cash Out product. For example, requiring an APR disclosure under the Truth in Lending Act (TILA) would only confuse customers trying to evaluate the immediate costs (if any) of the Cash Out product and thereby undermine the fundamental purpose of TILA. In fact, Plaintiff Ramirez's repeated decision not to repay Cash Outs on schedule, without demonstrating that he faced any consequences or incurred any additional costs, shows that his actual APR in those instances was 0%. In contrast, under Plaintiffs' TILA argument, the APR EarnIn should have disclosed to Plaintiff Ramirez based on a "standard" repayment schedule would have reflected a scenario that was wholly divorced from the situation he encountered. In that instance, the "Truth" part of the Truth in Lending Act becomes a nullity. The reality—mischaracterized by Plaintiffs—is that EarnIn's Cash Out product helps consumers achieve financial security and access their earned wages when they need them. Mot. at 4–5, 17. And, contrary to Plaintiffs' suggestion, Cash Outs—given the absence of any mandatory repayment obligations, finance charges, or credit reporting—are nothing like "payday loans." Opp. at 3. Accordingly, the Amended Complaint should be dismissed with prejudice.

---

[2] Plaintiffs do not oppose EarnIn's Request for Judicial Notice and for Incorporation by Reference in Support of EarnIn's Motion to Dismiss (ECF No. 37) and have thereby conceded that the exhibits attached to the Declaration of Brett De Jarnette (ECF No. 36) are properly subject to this Court's consideration. *See Gjovik v. Apple Inc.*, No. 23-CV-04597-EMC, 2025 WL 637931, at *8 (N.D. Cal. Feb. 27, 2025) (finding plaintiff's "failure to timely oppose the request for judicial notice a waiver of any argument challenging the request for judicial notice").

## II. ARGUMENT

### A. Plaintiffs Concede that they Lack Standing to Bring a TILA Claim.

EarnIn's opening brief showed that Plaintiffs' continued use of the Cash Out product even *after* filing suit defeats their standing to bring a TILA claim. Mot. at 18 n.17; ECF No. 35, Notice of Motion at 1. Plaintiffs fail to address this argument, thereby conceding that they lack standing to bring their TILA claim. *See, e.g.*, *James E. Roberts-Obayashi v. Steadfast Ins. Co.*, No. C05-02079 MJJ, 2005 WL 8162728, at *3 (N.D. Cal. Oct. 20, 2005) (where "Plaintiff has not even addressed the standing issue in it's [*sic*] opposition to the motion [to dismiss] . . . the court treats the issue of standing as conceded by Plaintiff"). That claim should be dismissed.

### B. EarnIn's Cash Out Product is Not an Extension of Credit Under the MLA or TILA.

The text of the MLA and TILA—each of which requires a consumer to incur "debt" before any statutory duty is triggered—forecloses Plaintiffs' federal claims. As noted above, the MLA and TILA define "credit" as the right "to defer payment of debt or to incur debt and defer its payment." 15 U.S.C. § 1602(f); 32 C.F.R. § 232.3(h). The question, then, is whether Plaintiffs plausibly plead that they were in "debt" to EarnIn. Plaintiffs concede (as they must) that "debt" means "being under obligation to pay or repay" and "[l]iability on a claim." Opp. at 7–8. But that concession undermines Plaintiffs' case because they were never under any obligation to repay EarnIn for any Cash Out. As EarnIn's operative agreement with Cash Out users plainly states: "**You do not have an obligation to repay any of the Cash Out Services, and EarnIn will have no legal or contractual claim or remedy against you based on your failure to repay any of the Cash Out Services**." Mot. at 14; De Jarnette Decl. Ex. 1. Had EarnIn ever tried to enforce a repayment obligation against Plaintiffs (which it has not), they surely would have pointed to this provision in EarnIn's Cash Out User Agreement as prima facie evidence that they did not, in fact, have any obligation to repay EarnIn. Indeed, the only result of failing to repay is that customers cannot receive future Cash Outs until they repay the earlier ones. *See* Mot. at 16; De Jarnette Decl. Ex. 1.

In *Orubo*, this Court stated that interpreting TILA to require a "repayment obligation" would "insert into the statutory text language found nowhere therein." 780 F. Supp. 3d at 936. But the statutory text applies to consumers who incur "debt," 15 U.S.C. § 1602(f)—which dictionaries define as "being under obligation to pay or repay" and "[l]iability on a claim." *Debt*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/debt (last accessed Sep. 12, 2025); *Debt*, BLACK'S LAW DICTIONARY (12th ed. 2024). Thus, TILA's "text" expressly contemplates a "repayment obligation." *Orubo*, 780 F. Supp. 3d at 936.

*Orubo* also appears to interpret TILA based on this Court's prior interpretation of the term "loan" under Georgia law. *See* 780 F. Supp. 3d at 935 (addressing Georgia law and then stating that TILA raises a "similar" issue). But in *Orubo*, this Court did not receive briefing on Georgia Senate Bill 282, which sought to amend Georgia law to address EWA products. *See* GA S.B. 282, § 1 (2025); Mot. at 13 n.10. The very fact that the Georgia legislature considered such a bill shows that current Georgia law does not already cover EWA products—otherwise, no amendment would have been necessary. Plaintiffs incorrectly claim that the proposed bill would have categorically "exempted EWA products" from Georgia law. Opp. at 10. In reality, the bill would have established a finely tuned regulatory scheme for such innovative financial products—thus showing that current law does not cover them. *See* GA S.B. 282, § 1 (2025); Mot. at 13 n.10. Given the incomplete briefing on Georgia law in *Orubo*, this Court should not allow its analysis there to dictate its analysis here.

In *Orubo*, this Court also relied on "real-world" practice in concluding that EarnIn customers have an obligation to repay Cash Outs. 780 F. Supp. 3d at 935. But the record in that case did not contain any transaction history showing the plaintiffs' real-world repayment practices. Here, by contrast, the record contains that history—and it belies any suggestion of a repayment obligation. On ten separate occasions, Plaintiff Ramirez did not repay his Cash Out on his scheduled payday. *See* De Jarnette Decl. ¶ 9, Ex. 6. And Ramirez does not and cannot allege that he suffered any adverse consequences as a result of his nonpayment. He experienced no collection efforts, no interest accrual, no late fees, and no credit bureau reporting. *See* Mot. at 4. As a result of his nonpayment, Ramirez merely could not obtain further Cash Outs until he repaid.

Ramirez's track record of nonpayment also forecloses Plaintiffs' contention that repayment is "mandatory" pursuant to "pre-authorized debits to linked bank accounts." Opp. at 8. As Ramirez's own experience shows, repayment is not required. Users can—and do—have the ability to revoke their debit authorization or remove their payment method at any time simply by contacting customer support, de-linking their bank accounts or debit cards, or closing their EarnIn account. *See* Mot. at 14; De Jarnette Decl. ¶ 11, Ex. 8. Plaintiffs attempt to dismiss these methods as "impractical and almost entirely unused." Opp. at 13. But Plaintiff Ramirez's own transaction records show the opposite—that customers can and do decline repayment. *See* Mot. at 17–18; *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008) ("[The court] need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice."). And while Plaintiffs emphasize (Opp. at 11) that most customers repay their Cash Outs, there is an "obvious alternative explanation" for why that is so: they like the product and wish to continue using it. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 567 (2007).[3]

In Plaintiffs' view, anytime a person "pre-authorize[s] debits to linked bank accounts," they incur a "debt" to the service provider, even if they may freely revoke the authorization with no recourse. Opp. at 8. That cannot be right. A person with a video-streaming subscription does not have an *obligation* to pay for future months simply because they have enrolled in autopay. Their option to revoke the autopay and cancel the subscription means no obligation exists. The same logic applies here.

Lacking support in the statutory text or practical realities, Plaintiffs turn to agency staff commentary on Regulation Z and a Department of Defense (DoD) regulation. *Id.* at 8–9. But those materials carry no weight for two reasons. *First*, they do not speak to the scenario presented here: a *revocable* payment authorization. Instead, they address "[p]ayday *loans*," "deferred

---

[3] Plaintiffs repeat the Amended Complaint's mischaracterizations of a podcast interview with EarnIn's CEO. *See* Opp. at 11 (asserting that EarnIn's CEO "admit[ted]" the non-payment risk is "very, very minimal"). In fact, EarnIn's CEO explained that EarnIn faces "some risk and some loss" with its Cash Out product. Mot. at 17. Moreover, EarnIn's CEO highlighted that the defining attribute of Cash Out is that it "put[s] the customer in charge instead of dictating to the customer what happens," De Jarnette Decl. Ex. 10—specifically, by giving customers autonomy over whether to repay.

presentment," and "'deposit advance' products," all of which include *irrevocable* repayment obligations. *See* 12 C.F.R. pt. 1026, Supp. I, Part 1 ¶ 2(a)(14) (2025) (emphasis added); 80 Fed. Reg. 43,560, 43,579 (July 22, 2015). Plaintiffs' own cases involving "deferred presentment" transactions confirm that customers must always repay. *Turner v. E-Z Check Cashing of Cookeville, TN, Inc.*, 35 F. Supp. 2d 1042, 1045 (M.D. Tenn. 1999) (customer required to repay, roll over principal with a fee, or allow check to be cashed); *Hamilton v. York*, 987 F. Supp. 953, 955 (E.D. Ky. 1997) (similar). The company in *Turner* even "threaten[ed] . . . criminal prosecution" when the plaintiff's check bounced. *See* 35 F. Supp. 2d at 1046. And creditors recoup deposit advances from the borrower's next deposit into the "asset account held by that creditor," 80 Fed. Reg. at 43,579, while executing "forced repayment[s] from the consumer's deposit account" if "an advance and the associated fee are not completely repaid."[4] Here, by contrast, if a Cash Out user were to decline to repay, they would merely lose access to Cash Out until repayment.

The differences between Cash Out and the products governed by Regulation Z do not end there. Regulation Z applies to products that use checks or EFTs with mandatory repayment triggers, have balances that roll over month to month, and lead to threatened collection or legal action. *See* 12 C.F.R. pt. 1026, Supp. I, Part 1 ¶ 2(a)(14) (2025); *Turner*, 35 F. Supp. 2d at 1045. EarnIn's Cash Out product has none of those features: there is no penalty for nonpayment, no rolling over of balances, no collateral, and no collection efforts. Regulation Z thus has no application to the Cash Out product.

*Second*, even if the official commentary to Regulation Z addressed products like Cash Out, it would still not support Plaintiffs' position. Under *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), this Court "must exercise independent judgment in determining the meaning of statutory provisions," without deference to agency interpretations. *Id.* at 394. As already explained, the MLA and TILA are "best read[]," *id.* at 400, to apply only to products that include a legal obligation to repay. To the extent agencies have sought to expand those statutes more broadly, this Court would be required to reject that interpretation as "inconsistent with the law."

---

[4] CFPB, *Payday Loans and Deposit Advance Products* 12 (April 2013), http://files.consumerfinance.gov/f/201304_cfpb_payday-dap-whitepaper.pdf.

*Id.* at 392. Nor would the Court even owe those interpretations respectful consideration under *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944). *See Loper Bright*, 603 U.S. at 394. Such consideration "depend[s] upon the thoroughness evident" in the agency's "reasoning." *Skidmore*, 323 U.S. at 140. Here, the staff commentary on Regulation Z offers no explanation—let alone a thorough one—for why the MLA or TILA would apply to earned wage access products that impose no obligation to repay.

Indeed, applying the MLA or TILA to such products would make no sense because the products are a mismatch with those statutory frameworks. EarnIn's Cash Out product provides non-recourse access to wages already earned, with no mandatory fees. Because there is no obligation to repay and no cost to using the service, applying credit disclosure frameworks like APR would mislead rather than inform consumers. Even when consumers choose to pay an optional fee (e.g., for expedited delivery), APR calculations distort the transaction. This is because APR must be expressed as an annualized rate, which magnifies the impact of small flat fees over short repayment periods. As a result, the very same $2.99 Lightning Speed fee would generate a much higher APR for an advance taken four days before payday than for one taken ten days before payday, even though the optional fee and advanced amount are identical in both cases. Such disclosures would serve no purpose other than to confuse, rather than help, consumers.

Thus, the agency staff commentary on Regulation Z has little relevance here. Instead of focusing on that commentary, the analysis should "begin where all [statutory interpretation] inquiries must begin: with the language of the statute itself." *Caraco Pharm. Lab'ys, Ltd. v. Novo Nordisk A/S*, 566 U.S. 399, 412 (2012) (internal quotations omitted). Nor should the staff commentary be "entitled to deference." *Orubo*, 780 F. Supp. 3d at 936. After all, *Loper Bright* specifically holds that courts "may *not* defer to an agency interpretation of the law" because "[t]he deference that [*Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984)] requires of courts reviewing agency action cannot be squared with the [Administrative Procedure Act]." 603 U.S. at 396, 413 (emphasis added).

Similarly, TILA need not be "liberally construed" to further a "purpose" of informing consumers. *Orubo*, 780 F. Supp. 3d at 936 & n.5. As the Supreme Court has explained, "it is quite

mistaken to assume . . . that any interpretation of a law that does more to advance a statute's putative goal must be the law." *Stanley v. City of Sanford*, 145 S. Ct. 2058, 2067 (2025) (internal quotations omitted). And "the textual limitations upon a law's scope"—here, the limitation to "debt" alone—"must be understood as no less a part of its purpose than its substantive authorizations." *Id.* (internal quotations omitted).

Finally, Plaintiffs err in relying on distinct transactions that are labeled "non-recourse." Opp. at 11. In Plaintiffs' cited cases, a failure to repay would have resulted in the loss of property—meaning that the transactions involved recourse against the collateral, not against the individual. *See, e.g., Cox v. Cmty. Loans of Am., Inc.*, No. 4:11–CV–177 (CDL), 2014 WL 1216511, at *8 (M.D. Ga. Mar. 24, 2014) (loss of car and title); *Fin. Freedom Acquisition, LLC v. Std. Bank & Tr. Co.*, 43 N.E.3d 911, 913 (Ill. 2015) (mortgage foreclosure); *Gonzalez v. Specialized Loan Servicing, LLC*, 691 F. Supp. 3d 1162, 1170 (C.D. Cal. 2023) (mortgage secured by real property); *California Pawnbrokers Assn., Inc. v. Carter*, No. 2:16-cv-02141-JAM-KJN, 2016 WL 6599819 (E.D. Cal. Nov. 8, 2016) (pawn loans involving the deposit of personal property as collateral). Conversely, here, if a user chooses not to repay a Cash Out, EarnIn has no recourse against either the user or their bank account—so the phrase "non-recourse" is not merely a label, but an accurate description of Cash Out's terms and real-world implications.[5]

### C. Optional Lightning Speed Fees and Tips Are Not Finance Charges.

Even if Cash Outs constituted "credit," which they do not, Plaintiffs still fail to plausibly allege that EarnIn's optional fees—namely, tips and Lightning Speed fees—qualify as finance charges under the MLA, TILA, or the Illinois Predatory Loan Prevention Act (IPLPA). For purposes of all three statutes, Regulation Z defines "finance charge" as a charge "imposed . . . by the creditor as an incident to or a condition of the extension of credit." 12 C.F.R. § 1026.4(a); *see* 32 C.F.R. § 232.3(n); Ill. Admin. Code tit. 38, § 215.10. "Impose" means "to establish or apply by authority." *Impose*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/impose

---

[5] Plaintiffs cannot distinguish *Reed v. Val-Chris Investments, Inc.*, No. 11cv371 BEN (WMC), 2011 WL 6028001 (S.D. Cal. Dec. 5, 2011), by noting that the *Reed* plaintiff made no promise to repay. Opp. at 12. Here, Ramirez's own transaction records show that Cash Out users likewise make no "promise" to repay. De Jarnette Decl. Ex. 6.

(last accessed Sep. 11, 2025). Thus, a charge is "imposed . . . by the creditor" only if the putative creditor applies the charge by authority—i.e., *requires* it—in order for the consumer to obtain the extension of credit. An optional fee is not "*imposed . . . by*" the putative creditor; rather, it is voluntarily paid by the consumer.

Here, Lightning Speed fees and tips are not "imposed . . . by" EarnIn on customers because those fees and tips are entirely optional. Users may obtain a Cash Out regardless of whether they pay such a fee or tip. Mot. at 19. The only thing that changes based on a user's payment of an optional Lightning Speed fee is the *speed* of the delivery. Just as with a fee for same-day shipping on an online purchase, the product is unchanged. Likewise, just as a person can make a donation on GoFundMe or book travel on Hopper without paying optional tips, customers can obtain Cash Outs without tipping EarnIn. *See id.* at 6.

The Eleventh Circuit's decision in *Veale v. Citibank, F.S.B*, 85 F.3d 577 (11th Cir. 1996), is instructive. *Veale* held that a fee one "can choose to avoid"—there, an optional FedEx charge for faster delivery—is "not *imposed* as an incident to [an] extension of credit." *Id.* at 579 (emphasis added). Other courts agree with that straightforward logic. *See McAnaney v. Astoria Fin. Corp.*, 665 F. Supp. 2d 132, 148 n.16 (E.D.N.Y. 2009) (Bianco, J.) (whether a fee "should have been included in the finance charge depends on whether it was voluntarily assumed by the borrower"); *London v. Chase Manhattan Bank USA, N.A.*, 150 F. Supp. 2d 1314, 1325 (S.D. Fla. 2001) (similar). Plaintiffs seek to distinguish *Veale* on the grounds that the fees there were used to "offset" other expenses. Opp. at 18. But under Regulation Z, the only question is whether the charge is "imposed . . . by the creditor as an incident to or a condition of the extension of credit," 12 C.F.R. § 1026.4(a)—the creditor's reason for imposing the charge is irrelevant.

Plaintiffs attempt to conjure two versions of Cash Out—one with an "instant-funding" mechanism and one without. Opp. at 18. And because the Lightning Speed fee is necessary to invoke that "instant-funding" feature, Plaintiffs argue that the fee should be considered a finance charge. That same fiction could have applied in *Veale*. But instead of indulging it, the Eleventh Circuit rejected any effort to bifurcate the financial product based on the method of delivery. The same is true here: Cash Out is one—and only one—product, which EarnIn makes available at two

1   different delivery speeds. Customers can obtain a Cash Out without paying any fee, or they may
2   choose to obtain a Cash Out on an expedited basis by paying an optional Lightning Speed fee. *See*
3   ECF No. 26 (hereinafter "FAC") ¶ 68; Mot. at 5–6.

4   Plaintiffs' transaction records again illustrate the point. In March and April of 2024,
5   Ramirez received 15 consecutive Cash Outs without paying a Lightning Speed fee. *See* Mot. at 8;
6   De Jarnette Decl. Ex. 6. Ramirez's records show that Cash Outs are a desirable product even
7   without Lightning Speed, and that Lightning Speed is simply a faster way of obtaining the same
8   product. Indeed, Plaintiffs conspicuously fail to address the "real-world" Lightning Speed fee
9   screen featured in EarnIn's motion. *See* Mot. at 6. That screen clearly shows that users receive the
10  same product irrespective of whether they choose the Lightning Speed fee option—the only
11  difference is the method of delivery.



27  Plaintiffs' transaction records also show that tips are optional. Plaintiffs Ramirez and
28  Collins both left *zero* tip in multiple transactions—Ramirez refrained from tipping in 34

transactions and Collins left zero tip in his second Cash Out transaction. *See id.* at 7–8; De Jarnette Decl. Exs. 6 & 7. As those records demonstrate, obtaining a Cash Out without paying a tip is not "difficult." *See* Opp. at 16 n.5 (quoting *Orubo*, 780 F. Supp. 3d at 938).

To be sure, in *Orubo*, this Court found that "voluntary" expedite fees and tips for EWA advances are "finance charges." 780 F. Supp. 3d at 937–38. But this Court in *Orubo* did not have the benefit of plaintiffs' transaction history before it. Here, by contrast, that transaction history is in the record and paints a clear picture: Cash Out users are not required to pay Lightning Speed fees or tips to enjoy the Cash Out product. *See* Mot. at 7–8; De Jarnette Decl. Exs. 6 & 7. Tellingly, Plaintiffs never address their transaction records in the context of tips and Lightning Speed fees.

Plaintiffs also misconstrue (Opp. at 17) the Supreme Court's decision in *Household Credit Servs., Inc. v. Pfennig*, 541 U.S. 232 (2004). There, when interpreting the same language at issue here in TILA, the Court stated that "incident to" "implies some *necessary* connection between the antecedent and its object." *Id.* at 241. "[N]ecessary" means "absolutely needed" or "essential." *Necessary*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/necessary (last accessed Sep. 11, 2025); *see Necessary*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("That is needed for some purpose or reason; essential."). The Court thus rejected Plaintiffs' suggestion that the phrase "incident to" in TILA simply means "anything which is usually connected with another." Opp. at 14 n.4 (citation omitted). As the Court explained, such a boundless interpretation of "incident to" would be inconsistent with "the language and design of the statute as a whole." *Pfennig*, 541 U.S. at 239 (citation omitted). Here, because neither tips nor Lightning Speed fees are absolutely needed or essential to obtaining a Cash Out—as Plaintiffs' own transaction records show—they are not "finance charges" under TILA.

Finally, the Court should reject Plaintiffs' analogies to inapposite regulations and statutes. They cite a preamble to a 1996 Federal Reserve Board rule explaining why fees for a *different* product (debt cancellation products) are finance charges. *See* Opp. at 16 (citing 61 Fed. Reg. 49,237, 49,239 (Sept. 19, 1996)). But the cited language appears nowhere in the current Code of Federal Regulations, was not readopted by the CFPB following the Dodd-Frank Act's enactment, and has been cited by only one decision other than *Orubo*. Plaintiffs also cite (Opp. at 15) the Fair

Debt Collection Practices Act's (FDCPA) prohibition on collecting "*any amount* (including any interest, fee, charge, or expense incidental to the principal obligation)," 15 U.S.C. § 1692f(1) (emphasis added), which some courts read to cover optional fees. But under Regulation Z, a finance charge is not "any amount" payable to a putative creditor—it is a charge "*imposed*" by that creditor, thus excluding optional fees.

### D.   Plaintiffs Fail to State a Claim Under the IPLPA.

Because Cash Out does not trigger the MLA or TILA, *see* Section B, *supra*, it does not trigger the IPLPA either. The IPLPA extends only to "loan[s]," which are extensions of credit to consumers "in exchange for the consumer's agreement to a certain set of terms, including . . . finance charges, interest, or other conditions." 815 ILCS § 123/15-1-10. Because the statute's express purpose "is to protect consumers from predatory loans consistent with federal law," 815 ILCS § 123/15-1-5, it should "be interpreted in harmony with federal law," *In re Smith*, Bankruptcy No. 24 B 07529, 2025 WL 1794127, at *7 (Bankr. N.D. Ill. June 26, 2025). Thus, the IPLPA simply extends the MLA to additional *persons* beyond servicemembers—not to additional *products* beyond consumer credit under federal law. Indeed, holding that a product that complies with the MLA and TILA "nonetheless violates the PLPA" would "defeat the express purpose of the PLPA." *Id.*

Plaintiffs' reliance on a "press release" by the Illinois Department of Financial & Professional Regulation (IDFPR) contradicts principles of Illinois administrative law. Opp. at 20. The press release did not go through notice and comment and thus warrants no deference. *See* 815 ILCS 123/15-5-20. Nor do Plaintiffs deny that the press release is no longer available on the IDFPR's website. *See* Opp. at 20; Mot. at 13 n.12. In fact, the IDFPR issued industry-facing guidance concerning the IPLPA on April 5, 2021 that made no reference to "wage access products" falling within the IPLPA's definition of "loan." *See Public Act 101-0658 and Predatory Loan Prevention Act (PLPA) Frequently Asked Questions*, ILL. DEP'T FIN. & PROF. REG'N (Apr. 5, 2021), https://idfpr.illinois.gov/content/dam/soi/en/web/idfpr/forms/dfi/2021-05-13-plpa-faqs.pdf. And unlike Plaintiffs' cited press release, that industry-facing guidance is still available on the IDFPR's website. *See id.*

Plaintiffs' argument that Cash Out results in users accruing an "unpaid balance" fares no better. Opp. at 20. The IPLPA prohibits certain charges on an "unpaid balance of the amount financed for a loan." 815 ILCS 123/15-5-5. But as already explained, Cash Out is not a loan because it need not be repaid. *See Beebe v. Kirkpatrick*, 152 N.E. 539, 541 (Ill. 1926) ("A loan is money borrowed, to be paid back at all events."). And without an enforceable repayment obligation, there is no unpaid balance on any loan. In all events, even if Cash Out were a loan under the IPLPA (which it is not), it would still not violate the statute because the Amended Complaint fails to allege a finance charge. *See* Mot. at 18–24; *supra* at 8–12.

### III. CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice.

Dated: September 12, 2025

COOLEY LLP

By: */s/ William K. Pao*
William K. Pao

WILLIAM K. PAO (252637)
JONATHAN B. WAXMAN (294851)
Wells Fargo Center, South Tower
355 South Grand Avenue, Suite 900
Los Angeles, CA 90071
Telephone: (213) 561-3250
Facsimile: (213) 561-3244
wpao@cooley.com
jwaxman@cooley.com

BRETT DE JARNETTE (292919)
AMIE L. SIMMONS (336356)
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone: (650) 843-5000
Facsimile: (650) 849-7400
bdejarnette@cooley.com
asimmons@cooley.com

*Attorneys for Defendant*
ACTIVEHOURS, INC. dba EARNIN