UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FELIX RAMIREZ, et al.,

        Plaintiffs,

    v.

ACTIVEHOURS, INC.,

        Defendant.

Case No.  25-cv-03625-PCP

**ORDER DENYING MOTION TO DISMISS**

Re: Dkt. Nos. 35, 60

Plaintiffs Felix Ramirez and Michael Collins bring this class action complaint against defendant Activehours, Inc., doing business as EarnIn, for violations of the Truth in Lending Act (TILA), the Military Lending Act (MLA), and the Illinois Predatory Loan Prevention Act (IPLPA). Plaintiffs argue that EarnIn engages in a "systematic nationwide policy and practice" of "predatory lending practices." EarnIn moves to dismiss under Rule 12(b)(6) for failure to state a claim. For the following reasons, EarnIn's motion is denied.

## BACKGROUND

EarnIn offers an "earned wage access" (EWA) product called "Cash Out" that offers cash advances on customers' paychecks.[1] EarnIn lets users receive up to $150 per day and $750 per pay period. To obtain these advances, customers must show that they have an employer who pays them at least $320 per pay period, link the bank account that receives their paychecks to the EarnIn app, and authorize EarnIn to automatically deduct from that account the amount they owe EarnIn, plus fees and tips. Customers must also pass EarnIn's proprietary credit check, which

---

[1] For the purposes of this Rule 12(b)(6) motion, the Court assumes the truth of the allegations in the amended complaint. EarnIn also moves to submit a statement of recent decision pursuant to Local Civil Rule 7-3(d)(2). Dkt. No. 60. Plaintiffs oppose EarnIn's motion, arguing that EarnIn included argument in its statement in violation of Local Civil Rule 7-3(d)(2). Plaintiffs are correct. The Court nonetheless grants EarnIn's motion but only as to the decision itself.

United States District Court
Northern District of California

EarnIn imposes to ensure that customers' linked bank account will have sufficient funds to repay EarnIn's automatic account debits on the customer's payday. EarnIn requires customers to provide their work email address or share their location via GPS to ensure that customers are working.[2]

Plaintiffs allege that EarnIn ensures customers pay back their cash advances. EarnIn's website and app tell users that they must repay advances "when your paycheck hits" and are "due to EarnIn on payday." If a customer does not repay a cash advance, EarnIn suspends their account until the advance is repaid. EarnIn's terms of service, however, describe Cash Out cash advances as "non-recourse" advances.

EarnIn generates its revenue through both expedite fees and "tips." An expedite fee, also called a "Lighting Speed Fee" by EarnIn, allows a customer to get access to the cash advance faster, usually in minutes, by paying $3.99 or $5.99 depending on the size of the advance.[3] If a customer does not pay for "Lighting Speed," they will receive the money in one to three days. EarnIn promotes its EWA product as fast and easy to use, and EarnIn's website touts customers' ability to "Get money in your bank in minutes with Lightning Speed" and "Get paid today."

Tips are nominally optional additional money customers can pay EarnIn. In order to get a cash advance, customers must proceed past a screen in the EarnIn app that has them pay a "tip." Plaintiffs allege that EarnIn uses deceptive techniques to ensure that most users pay some tips, including visual and structural indicators suggesting that the tip is required or making opting out of leaving a tip difficult as well as representations that the tips are needed to keep EarnIn running.

The combination of fees and tips, plaintiffs allege, makes EarnIn's Cash Out EWA product a "debt trap for vulnerable consumers." EarnIn's cap on how much money a customer can take out in any one transaction or pay period means that customers have to take out multiple loans and pay multiple fees to access more money. Plaintiffs cite studies from the California Department of

---

[2] EarnIn requests judicial notice of a set of documents under the incorporation-by-reference doctrine, *see Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018), or the Court's ability to take judicial notice under Federal Rule of Evidence 201(b), Dkt. No. 37. Plaintiffs do not oppose EarnIn's request. The Court therefore takes judicial notice of the documents.

[3] Plaintiffs allege that the "actual cost to provide customers with instant access to funds is less than $0.05."

Financial Protection and Innovation as well as public testimony from an EarnIn employee that tips constitute 40 percent of EarnIn's revenue. Plaintiffs also describe a study of thousands of EarnIn cash advances that found that the average annual percentage rate (APR) for EarnIn loans was 284 percent, and allege that the APR on the advances to Ramirez and Collins reached as high as 1,458 percent. Among EWA consumers generally, including customers of services other than EarnIn, one study found that using such financial products correlated with a 56 percent increase in bank overdraft fees as borrowers tried to address the building balances. Plaintiffs allege that customers ultimately end up in a "cycle of reborrowing that increases their financial distress" and leaves them worse off.

Sergeant Felix Ramirez and Petty Officer First Class Michael Collins are active servicemembers in the U.S. Marine Corps and Navy, respectively. Ramirez and Collins used EarnIn's Cash Out product to pay for personal needs and paid EarnIn fees and tips amounting to APRs reaching triple- or quadruple-digit percents. Ramirez took out 89 loans while Collins took out more than 25.

EarnIn now moves to dismiss plaintiffs' first amended complaint under Rule 12(b)(6) as to all claims and under Rule 12(b)(1) as to the TILA claim.

## LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to establish a federal court's subject matter jurisdiction may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1).

If the complaint fails to state a claim, the defendant may move for dismissal under Federal Rule of Civil Procedure 12(b)(6). Dismissal is required if the plaintiff fails to allege facts allowing the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a

3

claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

In considering a Rule 12(b)(6) motion, the Court must "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable" to the non-moving party. *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1029–30 (9th Cir. 2009). While legal conclusions "can provide the [complaint's] framework," the Court will not assume they are correct unless adequately "supported by factual allegations." *Iqbal*, 556 U.S. at 679. Courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

## ANALYSIS

In moving to dismiss plaintiffs' claims for failure to state a claim, EarnIn asserts two arguments. First, EarnIn argues that its Cash Out offering is not a "loan" or "credit" under the TILA, MLA, or IPLPA. Second, EarnIn argues that its fees are not "finance charges" under any of those statutes. For the reasons stated below and in this Court's order in *Orubo v. Activehours, Inc.*, 780 F. Supp. 3d 927 (N.D. Cal. 2025), EarnIn is incorrect.[4]

### I. Plaintiffs state a claim under TILA.

"Congress enacted TILA to promote the 'informed use of credit' by consumers." *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 872 (N.D. Cal. 2010) (quoting 15 U.S.C. § 1601(a)). TILA seeks to "assure a meaningful disclosure of credit terms" in order to assist consumers in making informed decisions and protect them from unfair credit practices. *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) (quoting 15 U.S.C. § 1601(a)). Under TILA, a creditor must disclose the (1) identity of the creditor, (2) amount financed, (3) finance charge,

---

[4] EarnIn distinguishes the instant case from *Orubo* by pointing to Ramirez's and Collins's transaction records, which purportedly show that they did not avail themselves of expedite fees or tips for every transaction. But the transaction records, whose meaning is contested and not necessarily self-evident, cannot be considered on a Rule 12(b)(6) motion. And in any event, even assuming that plaintiffs' transaction records show that fees and tips are legally optional and not always paid, that would not affect the Court's conclusions. *See, e.g.*, *Orubo v. Activehours, Inc.*, 780 F. Supp. 3d 927, 938 (N.D. Cal. 2025) (acknowledging that "[u]sers may not be strictly required to pay a tip").

United States District Court
Northern District of California

(4) annual percentage rate, (5) sum of the amount financed and the finance charge, or total of payments, and (6) the number, amount, and due dates or period of payments scheduled. 15 U.S.C. § 1638(a)(1)–(6). TILA's disclosure requirements apply to any creditor that regularly extends credit for which the payment of a "finance charge is or may be required." 15 U.S.C. § 1602(g)(1).

### A. Plaintiffs adequately plead that EarnIn advances "credit" under TILA.

EarnIn first argues that its cash advances are not "credit" under TILA because customers have no legal obligation to repay them. But EarnIn's argument is contrary to both longstanding regulations implementing TILA and the parties' alleged expectations.

TILA defines credit as "the right … to defer payment of debt or to incur debt and defer its payment." 15 U.S.C. § 1602(f). Regulation Z, which implements TILA, clarifies that "[c]redit includes a transaction in which a cash advance is made to a consumer … in exchange for the consumer's authorization to debit the consumer's deposit account, and where the parties agree … that the consumer's deposit account will not be debited[] until a designated future date." 12 C.F.R. pt. 1026, Supp. I, Paragraph 2(a)(14) Credit, ¶ 2 ("Payday loans; deferred presentment"). EarnIn's advances involve the type of deferred presentment scheme that Regulation Z characterizes as credit. EarnIn advances cash in exchange for authorization to debit a borrower's bank account immediately after their employer deposits their paycheck on payday. EarnIn's practice thus squarely falls within TILA's definition of credit whether or not customers have a legal obligation to repay EarnIn's advances. Neither the statute nor the implementing regulation says that courts should interpret "credit" to require a legal obligation to repay.

Where, as here, a statute empowers an agency "to fill up the details of a statutory scheme [or] to regulate subject to the limits imposed by a term or phrase that leaves agencies with flexibility," the agency's reasoned interpretation, within the constitutional bounds of its delegated authority, is entitled to deference. *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394–95, 404 (2024) (cleaned up); *see Household Credit Servs., Inc. v. Pfennig*, 541 U.S. 232, 244–45 (2004) (quoting 15 U.S.C. § 1604(a)) ("Congress has authorized the [Federal Reserve] Board to make 'such classifications, differentiations, or other provisions, and [to] provide for such adjustments and exceptions for any class of transactions, as in the judgment of the Board are necessary or

5

United States District Court
Northern District of California

proper to effectuate the purposes of [TILA], to prevent circumvention or evasion thereof, or to facilitate compliance therewith."). Regulation Z thus strongly supports the conclusion that EarnIn's product involves "credit" for the purposes of TILA.

In support of its contrary position, and in suggesting that the Court should not rely upon Regulation Z, EarnIn cites a December 2025 advisory opinion from the Consumer Financial Protection Bureau (CFPB). But the opinion does not address the allegations here. The CFPB opinion addressed "Covered EWA," which it defined to require, among other conditions, that the "provider does not directly or indirectly assess the credit risk of individual workers, including through obtaining and reviewing credit reports or credit scores about individual workers." Truth in Lending (Regulation Z); Non-application to Earned Wage Access Products, 90 Fed. Reg. 60069, 60071 (Dec. 23, 2025). In this case, plaintiffs allege that EarnIn uses several measures to assess their individual credit risk, including by "verif[ying] its customers' consistent income by requiring that borrowers link their financial accounts to the EarnIn app," partnering with Plaid to evaluate a customer's ability to pay, and tracking the physical location of 85% of its users "so that EarnIn can be sure borrowers are working (and will therefore be able to repay Cash Out loans) when they say they are." EarnIn also resembles a traditional creditor by offering users a lower initial line of credit and then increasing that limit based on borrowers' past history of creditworthiness. Therefore, regardless of the ultimate weight owed to it as an interpretive matter, the CPFB's advisory opinion does not apply to EarnIn. And in any event Regulation Z and its definition of credit remain in effect.

Plaintiffs also adequately plead that EarnIn customers have an obligation to repay EarnIn's cash advances via pre-authorized debits from the accounts into which their pay is deposited by their employer. Once again, EarnIn's disavowal of any *legal* repayment obligation is not determinative in interpreting TILA given the steps EarnIn takes to ensure that it will be repaid by its customers.[5] EarnIn's contrary construction would insert into the statutory text language found

---

[5] It is entirely possible that EarnIn's practices are in fact *more* effective in guaranteeing repayment than one that depended on pursuing legal debt collection remedies.

6

nowhere therein, disregard Regulation Z entirely, and contradict TILA's purpose and the Court's obligation to interpret the statute liberally with a focus on substance over form.[6]

Nor does the ability of customers to de-link their bank accounts from EarnIn mean that its product does not involve credit. EarnIn distinguishes the instant case from this Court's decision in *Orubo* because in that case "the Court did not receive any briefing … on a critical fact that Plaintiffs also omit from their Amended Complaint: EarnIn users *may revoke that authorization or remove the payment method … at any time*…." Motion to Dismiss at 14. EarnIn contends that customers therefore have a "real-world" choice not to pay EarnIn back. Motion to Dismiss at 14-16. But EarnIn's argument essentially restates its original mistaken argument that the lack of a legal obligation to repay means that its cash advances are not "credit." Even if customers can frustrate EarnIn's ability to procure repayment, they still receive credit as defined by the governing regulation, and accepting EarnIn's argument would improperly privilege form over substance. *See, e.g.*, *Williams v. Chartwell Fin. Servs., Ltd.*, 204 F.3d 748, 753 (7th Cir. 2000) ("[C]ourts are to focus on the economic substance of the transaction in determining whether TILA has been violated.").

Accordingly, Ramirez and Collins have adequately pleaded that EarnIn advances credit under TILA.

**B. Plaintiffs adequately plead that EarnIn levies a "finance charge" under TILA.**

As in *Orubo*, plaintiffs have adequately pleaded that EarnIn levies a "finance charge" under TILA.

TILA's disclosure requirements apply only to creditors. Regulation Z defines a creditor as

---

[6] "[T]he Truth in Lending Act is liberally construed to protect consumers." *Burnett v. Ala Moana Pawn Shop*, 3 F.3d 1261, 1262 (9th Cir. 1993); *Gilliam, Tr. of Lou Easter Ross Revocable Tr. v. Levine, Tr. of Joel Sherman Revocable Tr.*, 955 F.3d 1117, 1123 (9th Cir. 2020); *see also Foster v. EquityKey Real Est. Invs. L.P.*, 2017 WL 1862527, at *3 (N.D. Cal. May 9, 2017) ("To determine whether TILA applies to the agreement here, the court must examine its nature…."); *David Oas v. Rama Cap. Partners, LLC*, 2020 WL 7089826, at *3 (C.D. Cal. Oct. 21, 2020); *Edwards v. Your Credit Inc.*, 148 F.3d 427, 436 (5th Cir. 1998) ("[T]he substance-over-form doctrine provides the proper framework for analyzing this case."); *Clark v. Rent-It Corp.*, 685 F.2d 245, 248 (8th Cir. 1982) (cleaned up) ("The legislative history of the TILA shows that Congress was aware that 'some creditors would attempt to characterize their transactions so as to fall one step outside whatever boundary Congress attempted to establish.'").

"[a] person who regularly extends consumer credit *that is subject to a finance charge* or is payable by written agreement in more than four installments (not including a down payment), and to whom the obligation is initially payable, either on the face of the note or contract, or by agreement when there is no note or contract." 12 C.F.R. § 1026.2(a)(17)(i) (emphasis added). TILA defines a "finance charge" as "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor *as an incident to the extension of credit*." 15 U.S.C. § 1605(a) (emphasis added). Regulation Z similarly defines a finance charge as including "any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor *as an incident to or a condition of the extension of credit*." 12 C.F.R. § 1026.4(a) (emphasis added).

EarnIn observes that TILA applies only to creditors who "regularly extend[], whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required." 15 U.S.C. § 1602(g). EarnIn argues that its cash advances are not "credit" because they are repaid in one installment and a finance charge is not required. EarnIn interprets Regulation Z's phrase "incident to or a condition of" to mean that the fee or charge at issue must be *necessary* for the extension of credit.

But as this Court previously concluded in *Orubo*, a finance charge need not be necessary to be "incident to the extension of credit." *See Orubo*, 780 F. Supp. 3d at 936–38. Instead, it need only be *connected* to the imposition of a charge and the extension of credit. *See id.* at 937. At the time Congress enacted TILA, Black's Law Dictionary defined "incident" as "anything which is usually connected with another, or connected for some purposes, though not inseparably." *Incident*, Black's Law Dictionary (4th ed. 1968). In *Household Credit Services, Inc. v. Pfennig*, 541 U.S. 232, the Supreme Court explained that

> [T]he phrase "incident to or in conjunction with" implies some *necessary* connection between the antecedent and its object, although it "does not place beyond rational debate the nature or extent of the required connection." In other words, the phrase "incident to" does not make clear whether a substantial (as opposed to a remote) connection is required.

8

*Id.* at 240–41 (citation omitted). Although *Pfennig* did not determine how substantial the connection between a charge and the extension of credit needs to be in order to make the former "incident to" the latter, it confirmed that "incident to" means "connected to."

EarnIn argues that its Lightning Speed fees are optional and thus not finance charges, citing *Veale v. Citibank, F.S.B.*, 85 F.3d 577 (11th Cir. 1996). In that case, the Eleventh Circuit held that a $21 Federal Express charge paid to expedite the delivery of certain documents was not incident to the extension of credit because the plaintiffs "could have chosen not to pay the Federal Express fee and the bank did not require it." *Id.* at 579.

EarnIn's reliance on *Veale* is misplaced for two reasons. First, the fee at issue in that case was very different from the Lightning Speed fees at issue here. The fee enabled the plaintiffs to receive certain documents connected to their loan more quickly; as the Eleventh Circuit noted, the plaintiffs could have avoided the fee by simply "having the documents sent via regular mail." *Id.* That the plaintiff chose to pay that fee because it provided them with savings on *other* lines of credit, *see id.* (noting that "the delivery charge was the result of expediting the pay outs to the other financial institutions in an effort to save the Veales additional interest expense"), did not establish a necessary connection between the payment of the fee and Citibank's extension of credit to the plaintiffs. That credit would have been extended to the plaintiffs on precisely the same terms regardless of their payment of the expedited shipping fee. By contrast, as noted in *Orubo*, payment of the Lightning Fee here resulted in a material change in the terms of the credit extended to plaintiffs—namely, the date on which that credit would be made available to them. *Orubo*, 780 F. Supp. 3d at 938.

Second, the *Veale* court did not have the benefit of the guidance from the Supreme Court in *Pfennig*, which confirmed that TILA's use of "incident" denotes connection without determining how substantial that connection must be. 541 U.S. at 240–41. Nor did the *Veale* court have the considered guidance of the Federal Reserve and CFPB, which have both concluded that non-required fees may nonetheless constitute finance charges. *See* Truth in Lending (Regulation Z); Consumer Credit Offered to Borrowers in Advance of Expected Receipt of Compensation for Work, 89 Fed. Reg. 61358, 61362 (proposed July 31, 2024) ("Though consumers may not have to

opt for faster funds, when they do so, the resulting speed is a feature of the credit extended, so the resulting fee is part of the cost of credit."); Truth in Lending, 61 Fed. Reg. 49237, 49239 (Sept. 19, 1996) ("[E]ven though a lender may not require a particular loan feature, the feature may become a term of the credit if it is included.").

As in *Orubo*, EarnIn cites *Golubiewski v. Activehours, Inc.*, 2024 WL 4204272 (M.D. Pa. Sept. 16, 2024), in support of its position. In that case, the district court dismissed a similar TILA claim against EarnIn after determining that EarnIn's "tips and fees are not a condition to credit." *Id.* at *6. The Court rejected that argument in *Orubo* because *Pfennig* held that all that is required is "some necessary connection" between the fee and the extension of credit, and that reasoning applies with equal force here. *See Orubo*, 780 F. Supp. 3d at 937 (quoting *Pfennig*, 541 U.S. at 240–41). And notably, based in part on this Court's *Orubo* order, the *Golubiewski* court has since "steer[ed] … a different way" and now agrees that "[i]nstead of showing the charges were a *condition* of the credit extension, Plaintiffs need only allege a *connection* between them and the extension of credit." *Golubiewski v. Activehours, Inc.*, 2025 WL 2484192, at *6 (M.D. Pa. Aug. 28, 2025).

*Pfennig*'s holding that "incident to" means "connected to" is consistent with how relevant policymakers and enforcers have understood TILA's requirements. The enacting Congress sought to ensure that creditors could not evade TILA by "characteriz[ing] their transactions so as to fall one step outside whatever boundary Congress attempted to establish," *Clark v. Rent-It Corp.*, 685 F.2d 245, 248 (8th Cir. 1982), which supports "liberally constru[ing] [TILA] to protect consumers, *Burnett v. Ala Moana Pawn Shop*, 3 F.3d 1261, 1262 (9th Cir. 1993), and strongly cautions against construing "incident to" so narrowly as to exclude all but absolutely necessary conditions. For example, in 1996, the Federal Reserve System Board, which previously implemented TILA, explained that even though a particular loan feature *may not be required*, it "may become a term of the credit if it is included" in the loan contract. *See* Truth in Lending, 61 Fed. Reg. at 49239. In 2024, the Consumer Financial Protection Bureau, which now implements TILA, similarly issued a proposed interpretive rule explaining that "express fee" and "tip" charges are "finance charges" because "the connection between each type of payment and that extension [of credit] is close and

clear." Truth in Lending (Regulation Z); Credit Offered to Borrowers in Advance of Expected Receipt of Compensation for Work, 89 Fed. Reg. at 61362.

EarnIn unpersuasively points to other regulatory provisions that do not apply here, such as Regulation Z's exclusion of fees paid "to expedite delivery of a credit card," 12 C.F.R. pt. 1026, Supp. I, Part 1 ¶¶ 6(a)(2)-2(ix)–(x), and authorities not binding on this court, such as Indiana state law. EarnIn also cites to specific carveouts for optional payments elsewhere in Regulation Z to show that tips are "[l]ike donations in charitable and political contexts," which is to say discretionary and not "incident to" credit. Motion to Dismiss at 21. But the fact that regulators exempted *specific* optional fees related to insurance and debt relief, *see* 12 C.F.R. § 1026.4(a)(1)–(3), at least arguably supports the inference that other optional fees *may* constitute finance charges.

Here, plaintiffs plead a close connection between the payment of expedite fee and tips, on the one hand, and EarnIn's extension of a same-day cash advance, on the other. A potential borrower's effort to obtain a cash advance triggers EarnIn's solicitation of a tip: EarnIn users are solicited for a tip, sometimes repeatedly, before they can obtain a cash advance. The design of the EarnIn app makes it difficult for users to obtain an advance without paying a tip, and EarnIn's representations imply that the tip is necessary for EarnIn to continue offering cash advances. Users may not be required to pay a tip, but paying a tip is inextricably intertwined with obtaining a cash advance.

Even if "incident to" did mean mandatory, plaintiffs plead sufficient facts showing that the lightning speed fee was effectively mandatory. The time that users receive money is a material term of credit. Payment of the lightning fee is a condition to the specific terms on which credit is extended, such as the ability to receive requested credit "within minutes." The Federal Reserve and the CFPB have both understood fees relating to the timing of credit provision to be part of the terms of credit offered. *See* Truth in Lending (Regulation Z); Credit Offered to Borrowers in Advance of Expected Receipt of Compensation for Work, 89 Fed. Reg. at 61362 ("Though consumers may not have to opt for faster funds, when they do so, the resulting speed is a feature of the credit extended, so the resulting fee is part of the cost of credit."); Truth in Lending, 61 Fed. Reg. at 49239 ("[E]ven though a lender may not require a particular loan feature, the feature may

11

become a term of the credit if it is included.").

EarnIn argues that the lightning fee is voluntary because customers can choose not to pay it and instead receive their cash advance at a later date. But just as a home loan that makes funds available before the close of escrow is a fundamentally different product than one in which funds are only accessible several months later, a cash advance accessible "within minutes" and providing "instant access" to cash a borrower can use to "cover surprise expenses" is a different product than an advance that a borrower can only access days later. *See* Truth in Lending (Regulation Z); Credit Offered to Borrowers in Advance of Expected Receipt of Compensation for Work, 89 Fed. Reg. at 61362. Because EarnIn's immediate cash advance product is contingent on the payment of the lightning fee, the lightning fee is a necessary condition of EarnIn's extension of credit on the terms offered.

EarnIn's other cases are also not helpful to its argument. The district court in *Slowjewski v. Polam Federal Credit Union*, 2010 WL 4973757 (N.D. Cal. Dec. 1, 2010), concluded that the plaintiff's sole evidence that a FedEx fee was required was a "sham declaration" made only to create a genuine dispute of material fact to try to survive the motion for summary judgment. *Id.* at *8–9. The Supreme Court in *Pfennig* also dealt with fees charged for exceeding a credit limit and commented only that "it is perfectly reasonable to characterize an over-limit fee not as a charge imposed for obtaining an extension of credit over a consumer's credit limit, but rather as a penalty for violating the credit agreement." 541 U.S. at 240. And the Wyoming Supreme Court's interpretation of the Wyoming Consumer Credit Code is not binding on this Court's interpretation of TILA, nor is its quotation of the Supreme Court's noting of the Federal Reserve Bank's "decision to emphasize disclosure that are most relevant to a consumer's initial credit decisions." *See Vogel v. Onyx Acceptance Corp.*, 267 P.3d 1057, 1069 (Wyo. 2011) (quoting *Pfennig*, 541 U.S. at 243) (emphasis removed).

In short, a fee need not be mandatory to be "incident to the extension of credit" and thus a "finance charge" under TILA. For a fee to be a "finance charge" requires only a necessary connection between the imposition of the charge and the extension of credit. For the reasons stated above, plaintiffs adequately plead that EarnIn's tips and its Lightning Speed fees exhibit such a

12

United States District Court
Northern District of California

connection. EarnIn is therefore a creditor under TILA.

\*    \*    \*

In sum, none of EarnIn's challenges to the merits of plaintiffs' TILA claim succeeds. For that reason, its Rule 12(b)(6) motion regarding that claim is denied. EarnIn also challenges plaintiffs' "standing to bring a TILA claim" under Rule 12(b)(1), suggesting that plaintiffs have failed to allege a "concrete" injury because they allegedly continued to use EarnIn's services after filing suit. Motion to Dismiss 18 n.17. But plaintiffs allege that EarnIn has not provided them with the disclosures required by TILA, including annual percentage rates. TILA is premised on the principle that such disclosures are useful to consumers, and the Court can fairly infer that the failure to disclose important borrowing terms such as APRs and finance charges suffices to establish a concrete informational injury because it "presents" a "material risk of harm" arising from plaintiffs' inadequately informed use of EarnIn's products. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 342 (2016). Indeed, given that the applicable APR varies from transaction to transaction, EarnIn's failure to disclose that information gives rise to a new informational injury with each transaction. EarnIn's Rule 12(b)(1) motion is therefore also denied.

## II. Plaintiffs state a claim under MLA.

The Military Lending Act states in relevant part that "[a] creditor who extends consumer credit to a covered member of the armed forces … may not impose an annual percentage rate of interest greater than 36 percent …." 10 U.S.C. § 987(a)–(b). Ramirez and Collins allege that they are "covered members" because they are active servicemembers. And they allege that EarnIn charged them interest rates "well above the 36% interest rate cap on their loans." EarnIn argues that Ramirez and Collins have failed to allege that their Cash Out transactions were "credit" and that that "credit" was subject to a "finance charge" as defined and required under MLA.

### A.  Plaintiffs plead that EarnIn advances "credit" under the MLA.

"Credit" under the MLA "means the right granted to a consumer by a creditor to defer payment of debt or to incur debt and defer its payment." 32 C.F.R. § 232.3(h). Regulation Z's definition of credit is "nearly identical" to the MLA's, *see Revell v. Grant Money, LLC*, 808 F. Supp. 3d 1036, 1050 (N.D. Cal. 2025), and, as noted above, includes in its definition of credit a

13

"cash advance … in exchange for the consumers' authorization to debit the consumer's deposit account … where the parties agree[d] … that the … deposit account will not be debited[] until a designated future date." 12 C.F.R. pt. 1026, Supp. I Paragraph 2(a)(14) Credit, ¶ 2.

EarnIn argues that it does not offer "credit" under the MLA because its customers' repayment obligation is not legally binding. But as with TILA, the MLA's definition of credit is not limited to a *legally binding* payment of debt. Instead, the MLA applies to debt whose payment a consumer can defer. EarnIn customers have an obligation to repay EarnIn's cash advances because they pre-authorize debits from the accounts their pay is deposited into by their employer. Customers receive cash advances on their paycheck with the understanding that when their paycheck reaches their bank account, EarnIn will automatically debit that account and get paid back for its cash advance. Plaintiffs allege that EarnIn told customers that "cash advances must be repaid 'when your paycheck hits' and that repayments are 'due to EarnIn on payday.'" If a customer does *not* pay back a cash advance, EarnIn suspends their account. To conclude that "the MLA's definition of credit (and associated definition of debt) as requiring a *legal* obligation to repay, and not just a functional, transactional obligation to repay, [would] allow[] creditors to skirt the consumer protection functions of the statute and read[] a limitation into the statute that does not exist." *Revell*, 808 F. Supp. 3d at 1050. The substance of the transaction involves customers' incurring of a debt to EarnIn that they promise to repay through automatic debits on payday.

EarnIn also argues, as it did with respect to TILA, that customers do not incur any debt for the purposes of the MLA because they have the ability to disconnect their bank accounts from EarnIn in order to prevent repayment of their pre-authorized debits. For the reasons noted above, that argument is unpersuasive.

Therefore, Ramirez and Collins have pleaded that EarnIn offers "credit" under the MLA.

**B. Plaintiffs plead that EarnIn levies a "finance charge" under the MLA.**

"Consumer credit" under the MLA is a type of credit that includes "credit offered or extended to a covered borrower primarily for personal, family, or household purposes, and that is … [s]ubject to a finance charge." 32 C.F.R. § 232.3(f)(1)(i). The MLA's regulations in turn define "finance charge" to have "the same meaning as 'finance charge' in Regulation Z." 32 C.F.R.

§ 232.3(n). As it did with respect to TILA, EarnIn argues that it is not a creditor because it does not extend consumer credit "subject to a finance charge." For the same reasons noted above, however, plaintiffs adequately plead that EarnIn advances "credit" that is subject to a "finance charge" for the purposes of the MLA.

Because none of EarnIn's challenges to plaintiffs' MLA claim succeeds, EarnIn's motion to dismiss that claim is also denied.

**III. Plaintiffs state a claim under the IPLPA.**

The Illinois Predatory Loan Prevention Act provides that "a lender shall not contract for or receive charges exceeding a 36% annual percentage rate on the unpaid balance of the amount financed for a loan." 815 Ill. Comp. Stat. Ann. 123/15-5-5 (West 2026). Illinois instructs courts to "liberally constru[e] [IPLPA] to effectuate its purpose." 815 Ill. Comp. Stat. Ann. 123/15-1-5 (West 2026). And the IPLPA is expressly intended to be "consistent with federal law and the Military Lending Act." *Id.*; 815 Ill. Comp. Stat. Ann. 123/15-5-5 (requiring that the annual percentage rate be calculated as in Military Lending Act regulations at 32 C.F.R. § 232.4). The conclusions set forth above thus apply with equal force to plaintiffs' IPLPA claim.

In arguing for a contrary construction of the IPLPA, EarnIn notes the Illinois legislature's use of the phrase "unpaid balance" in the IPLPA's usury cap and argues that "there is no enforceable repayment obligation[] and therefore no unpaid balance." Motion to Dismiss at 15. That argument is unpersuasive for the same reasons that this Court concludes that EarnIn advances "credit" for the purposes of TILA and the MLA. *See supra*. The IPLPA does not require a legally binding obligation for a consumer to repay their debts, only "the consumer's agreement to a certain set of terms, including, but not limited to, any finance charges, interest, or other conditions." 815 Ill. Comp. Stat. Ann. 123/15-1-10 (West 2026). A legal obligation is not the only type of obligation that exists. To conclude otherwise would narrow inappropriately a law that the Illinois legislature commanded to be "liberally construed" so as to "protect consumers from predatory loans," 815 Ill. Comp. Stat. Ann. 123/15-1-5, especially given the IPLPA's prohibition on persons "engag[ing] in any device, subterfuge, or pretense to evade the requirements of this Act," 815 Ill. Comp. Stat. Ann. 123/15-1-15 (West 2026).

United States District Court
Northern District of California

Earnin's citations to Illinois state cases are unpersuasive. EarnIn cites *Osorio v. Tile Shop, LLC*, 2018 WL 1453552 (N.D. Ill. Mar. 23, 2018), as explaining that "a draw on plaintiff's future earnings issued through payroll was not a loan where plaintiff's employer 'does not always require repayment' because 'if a payor isn't going to ask for his money back, that doesn't sound much like a loan.'" Motion to Dismiss at 15; *see also Osorio*, 2018 WL 1453552, at \*5. But here, EarnIn *did* ask for its money back and does not contest that it did so. And while *In re Marriage of Caminiti*, 2019 Ill. App. (1st) 171563-U, ¶ 85, explained that a loan that "does not require repayment[] is more typically considered a 'gift,'" that court was discussing the difference between a "gift" and "income," not the definitional contours of a "loan" under the IPLPA.

Plaintiffs adequately plead that EarnIn's cash advances are "loans" under the IPLPA because they and other users reasonably understood them as such. Accordingly, EarnIn's motion to dismiss the IPLPA cause of action is also denied.

## CONCLUSION

For the foregoing reasons, EarnIn's motion to dismiss is denied.

**IT IS SO ORDERED.**

Dated: March 25, 2026

_____
P. Casey Pitts
United States District Judge

16